HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BARNEY MCCLANAHAN,

               Plaintiff,

     v.

CITY OF TUMWATER,

               Defendant.

No. 11-cv-5623 RBL

ORDER DENYING MOTION FOR
TEMPORARY INJUNCTION

     In June 2011, the City of Tumwater removed a yard sign from Plaintiff Barney McClanahan's property because the sign allegedly blocked the sidewalk.  Mr. McClanahan asserts that the removal, authorized by a City ordinance, is an unconstitutional infringement of his First Amendment rights.  Mr. McClanahan seeks a preliminary injunction preventing the City from enforcing the ordinance.  For the reasons below, the Court denies Mr. McClanahan's motion for a preliminary injunction.

## I. FACTUAL BACKGROUND

     In May 2011, Mr. McClanahan placed a number of yard signs in front of his business, Tumwater Pawn Brokers.  Pl.'s Mot. for Prelim. Inj. at 2 [Dkt. 10].  According to City employees, one of those signs protruded into the sidewalk, blocking the public right-of-way.  Dkt. 17 at 4.  Mr. McClanahan asserts that the sign was wholly within his yard.  Dkt. 10 at 2.

The sign read "Stop Taking Our Property" and directed readers to a web address: www.STOPThurston County.com. *Id.*

On June 11, 2011, after receiving complaints of signs throughout the city, Tumwater City employees conducted a sweep, removing McClanahan's sign in the process. Def.'s Resp. at 2 [Dkt. 17]. Mr. McClanahan, seeing the sign being pulled, came outside to investigate. Dkt. 10 at 2. City employees explained that his sign blocked a right-of-way and therefore violated the Tumwater Municipal Code. *Id.* The City employees returned the sign, gave Mr. McClanahan a letter detailing the City's sign ordinance, and asked Mr. McClanahan to stake the sign farther back. Dkt. 17 at 5. Notably, the City employees disturbed no other signs on Mr. McClanahan's property. *Id.*

Mr. McClanahan objects to Tumwater Municipal Code § 18.44.080(I), which prohibits signs "located upon or projecting over public streets, sidewalks or rights-of-way, except those of an official nature."[1] The code defines signs of an "official nature" as "any sign posted by a local government agency that is necessary to protect and regulate the public health safety and welfare." TMC § 18.44.015(EE).

Mr. McClanahan asserts that the ordinance "deprives individuals of their constitutionally-protected right to free speech." Dkt. 10 at 1. The City, on the other hand, argues that the ordinance "regulates signs in order to protect public health, safety and welfare." Dkt. 17 at 2; *see also* TMC § 18.44.010(B). Indeed, the City's traffic engineer, John Logan, explains that unauthorized signs in rights-of-way obstruct the vision of both pedestrians and drivers. Decl. of John Logan at 6 [Dkt. 19]. Signs may pose a particular threat to small children, who may be

---

[1] Mr. McClanahan also objects to TMC §§ 18.44.070(K) (exempting politically-related signs from permitting requirements); 18.44.120(B) (allowing city attorney to seek penalties for parties violating the ordinance); and 18.44.120(D) (allowing the City to immediately remove signs blocking rights-of-way). These implementing regulations appear to be ancillary, however, to § 18.44.080(I), which operates as the primary bar to signs that block rights-of-way in Tumwater.

ORDER- 2

1   hidden from the view of drivers.  *Id.*  Additionally, signs that block the rights-of-way may violate

2   federal laws protecting access to public spaces for the disabled.  *Id.* at 8.

3   ## II.  DISCUSSION

4          To obtain a preliminary injunction, Mr. McClanahan must show: (1) that he is likely to

5   succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of

6   preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in

7   the public interest. *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008)**.**  Injunctive

8   relief is an "extraordinary remedy" that "may only be awarded upon a clear showing that the

9   plaintiff is entitled to such relief." *Id.* (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

10       **A.**     **Plaintiff Has Not Established a Likelihood of Success on the Merits.**

11          Mr. McClanahan asserts that the City impermissibly restricts his speech in a traditional

12   public forum.  Dkt. 10 at 6.  He further contends that the City's statute is vague, overbroad, and

13   constitutes a prior restraint.  *Id.* at 12.  Finally, Mr. McClanahan asserts that the ordinance

14   violates the Washington State constitution.  *Id.* at 14.  Tumwater maintains that its ordinance is

15   constitutional under both the federal and state constitution.  The Court will address each of these

16   in turn.

17       **1.  The City Ordinance is a Permissible Restriction of Speech in a Public Forum.**

18          Mr. McClanahan correctly argues that public rights-of-way are a traditional public forum.

19   "[P]ublic places historically associated with free exercise of expressive activities, such as streets,

20   sidewalks, and parks, are considered, without more, to be public forums." *United States v.*

21   *Grace*, 461 U.S. 171, 177 (1983) (internal quotations omitted) (citing *Perry Educ. Assn. v. Perry*

22   *Local Educator's Assn.*, 460 U.S. 37, 45 (1983)).

23

24

1    In public forums, the government's ability to constitutionally restrict expression is very

2    limited.  "[T]he government may enforce reasonable time, place, and manner regulations so long

3    as the restrictions are content-neutral, are narrowly tailored to serve a significant government

4    interest, and leave open ample alternative channels of communication."  *Grace*, 461 U.S. at 177

5    (internal quotations omitted) (citing *Perry*, 460 U.S. at 45).  Tumwater argues its restriction is a

6    time, place, and manner regulation and meets the Supreme Court's prescriptions.

7    Mr. McClanahan claims that the City's ordinance is a content-based regulation subject to

8    strict scrutiny.  *See* Dkt. 10 at 8, 12.  The City claims the ordinance is content neutral.  Dkt. 17 at

9    9.  Dealing with content-based restrictions, the Court applies a higher, strict scrutiny standard.

10   To permissibly enforce a content-based restriction, "[the state] must show that its regulation is

11   necessary to serve a *compelling* state interest and that it is narrowly drawn to achieve that end."

12   *Perry*, 460 U.S. at 45 (emphasis added).

13   As Tumwater's ordinance undoubtedly curtails free speech, "the Government bears the

14   burden of proving the constitutionality of its actions."  *United States v. Playboy Entm't Group,*

15   *Inc.*, 529 U.S. 803, 816 (2000).

16   The City has shown the ordinance to be a reasonable time, place, and manner restriction

17   as it has demonstrated that the ordinance is content neutral, narrowly tailored to serve a

18   significant government interest, and leaves open ample means of communication.

19   **a.   The City's Restriction is Content Neutral.**

20   The primary consideration to determine content neutrality is "whether the government

21   has adopted a regulation of speech because of disagreement with the message it conveys."  *Ward*

22   *v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Menotti v. City of Seattle*, 409 F. 3d 1113,

23   1128 (9th Cir. 2005).  The Court must look to the government's purpose as the controlling

24

ORDER- 4

consideration.  *Ward*, 491 U.S. at 791.  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  *Id.*

In this case, Tumwater's limitation—barring signs "located upon or projecting over public streets, sidewalks or rights-of-way, except those of an official nature"—is based on location and speaker rather than content.  TMC § 18.44.080(I).  The code does not differentiate between different types of speech favoring some content by permitting it to be placed in the right-of-way while prohibiting other content.

The Ninth Circuit has held that an enforcement officer may look to the "content neutral element[] of who is speaking through the sign."  *Reed v. Town of Gilbert Arizona*, 587 F.3d 966, 976 (9th Cir. 2009).  The Tumwater code allows only signs "posted by a local government agency."  That agency then is "speaking through the sign."  The enforcement officer need not consider the substance of the sign's message; only the neutral element of whether a local government agency placed it in the right-of-way.

The City did not remove Mr. McClanahan's sign based on "disagreement with a message sought to be conveyed."  *G.K. Limited*, 436 F.3d at 1071.  Rather, it was removed because it was in the right-of-way and because it was not placed there by a governmental agency.  The ordinance is content neutral.

### b. The City's Ordinance is Narrowly Tailored to Advance a Significant Government Interest.

Though Tumwater's sign ordinance is content neutral, it must also be narrowly tailored to actually advance a significant governmental interest.  *Ward*, 491 U.S. at 791.  The regulation, however, "need not do so in the least restrictive or intrusive way."  *Ward*, 491 U.S. at 798-99; *Reed*, 587 F.3d at 979 (quoting *G.K. Ltd.*, 436 F.3d at 1073-74).  Rather, "the requirement of

narrow tailoring is satisfied so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (internal quotations omitted).  The government's chosen means of promoting its interests, however, may not be "substantially broader than necessary." *Id.*; *Reed*, 587 F.3d at 979.

The Court looks to the challenged code itself to determine what interests the city attempts to advance by restricting speech.  *See*, *Foti*, 146 F.3d at 637 ("The City's asserted interests in the ordinance are the oft-invoked and well-worn interests in preventing visual blight and promoting traffic and pedestrian safety."); *Reed*, 587 F.3d at 975; *G.K. Ltd.*, 436 F.3d at 1072.  The Tumwater code states in relevant part that, "it is the intent of these regulations to protect public safety."  TMC 18.44.010(B).

The interest in public safety is "readily recognized as [a] significant government interest[]." *Reed*, 587 F.3d at 979 (relying on *Metromedia v. City of San Diego*, 453 U.S. 490, 507-508, 101 S.Ct. 2882, 69 L.Ed.2d 80 (1981), *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996)).  The City's identification in the code of the recognized interest satisfies the requirement that the government put forth a significant interest. *Reed*, 587 F.3d at 980 (citing *Get Outdoors II v. City of San Diego*, 506 F.3d 886, 893-94 (9th Cir. 2007)).

The *Reed* Court held that time and place limitations on event signs actually did advance the government's interest and were not substantially broader than necessary, 587 F.3d at 980.  It acknowledged that while the limitations may not allow for the optimum exposure and convenience, that was not the appropriate test. *Id*.  The test is whether the government's means were substantially broader than necessary. *Id*. (quoting *G.K. Ltd.*, 436 F.3d at 1074).  Because

the city allowed the signs on a limited timeframe with specific location limitations, the ordinance

was not overly inclusive. *Reed*, 587 F.3d at 981.

Tumwater similarly restricts the location of signs, but otherwise allows signs with

political and other kinds of speech. Though this limitation may not allow the person placing the

sign "optimum exposure and convenience," it does permit such speech when it is not placed in

the right-of-way. Mr. McClanahan displayed other signs not within the right-of-way, including a

larger sign with the same message as the sign City employees removed. Mr. McClanahan was

able to retrieve the sign and was able to display it in a nearby location not within the right-of-

way.

Tumwater's interest in traffic safety and aesthetics is a recognized government interest.

Its means of advancing and defending this interest are not substantially broader than necessary.

The code is narrowly tailored to advance a significant government interest.

### c. The City's Ordinance Allows for Ample Alternative Methods of Communication

Mr. McClanahan has many alternative methods of communication available. Even if

those methods are not his preference, the Ninth Circuit has held that the test is not one of optimal

convenience, but whether the regulation "foreclose[s] an entire medium of public expression

across the landscape of a particular community or setting." *Reed*, 587 F.3d at 980 (internal

quotations omitted) (quoting *G.K. Ltd.*, 436 F.3d at 1074).

Mr. McClanahan asserts that this is precisely what the City regulation has done. Dkt. 10

at 10. Considering a permit requirement exception for temporary event-based signs, however,

*Reed* affirmed the District Court's proposed alternative means of communication. 587 F.3d 980-

81. These included: "distributing leaflets, sending email messages or mail advertisements,

walking the sidewalks with signs advertising the church services, posting signs carrying religious

1   messages on their own property, and advertising in the newspaper, phonebook or other print

2   media." *Id.* Similar alternatives exist to Mr. McClanahan in addition to the seemingly superior

3   alternative of which he has availed himself, posting his sign mere inches back so that it does not

4   protrude into the right-of-way.

5          **2.  Tumwater's Ordinance is Not Unconstitutionally Vague**

6         Mr. McClanahan claims that Tumwater's ordinance is unconstitutionally vague as the

7   statute neither defines right-of-way nor "articulates any standards used by city enforcement staff

8   for evaluating the location of a sign." Dkt. 10 at 13.  Mr. McClanahan bears the burden of

9   proving this claim. *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (petitioners failed to establish

10  that the challenged statute was unconstitutionally vague); *Human Life of Washington, Inc. v.*

11  *Brumsickle*, 624 F.3d 990, 1019-21 (9th Cir. 2010) (Human Life failed to establish that terms in

12  the statute were unconstitutionally vague).

13        Though Mr. McClanahan accurately points out that the city ordinance does not define the

14  term "right-of-way," the test for vagueness is not whether it is defined within the statute.  Rather,

15  "[a] statute can be impermissibly vague for either of two independent reasons.  First, if it fails to

16  provide people of an ordinary intelligence a reasonable opportunity to understand what conduct

17  it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory

18  enforcement." *Hill*, 530 U.S. at 732.

19        The Supreme Court does not employ a technical legal analysis to make this

20  determination; it follows common sense logic. *Hill*, 530 U.S. at 732 (saying, "[t]he likelihood

21  that anyone would not understand any of those common words seems quite remote").  That

22  anyone would not understand the term "right-of-way" is similarly remote.

23        The Ninth Circuit and the Washington Supreme Court have each dealt with statutes that

24  included the term "right-of-way" and have not found those statutes impermissibly vague. *G.K.*

1   *Limited*, 436 F.3d at 1076; *Collier v. City of Tacoma*, 121 Wn.2d 737, 744 (1993).  The

2   Washington Supreme Court apparently relied on testimony from a Tacoma Public Works

3   Department employee to understand precisely where the city prohibited certain signs and still did

4   not consider the term impermissibly vague.  *Collier*, 121 Wn.2d at 743-44 fn.2.

5           The ordinary meaning of right-of-way is sufficiently clear.  This is not a complex

6   ordinance and only one location, the right-of-way, is at issue.  Others in violation of the

7   ordinance did not claim they were confused or unclear as to what the ordinance mandated.  A

8   person of ordinary intelligence has a reasonable opportunity to understand the conduct the

9   ordinance prohibits.

10          Mr. McClanahan has offered no evidence that the ordinance authorizes or encourages

11  discriminatory enforcement, the way to challenge a statute for vagueness under *Hill*.  530 U.S. at

12  732.  Therefore his claim fails this test for unconstitutional vagueness as well.   The Supreme

13  Court has said, "[a]s always, enforcement requires the exercise of some degree of police

14  judgment."  *Id.* at 733.  Here, as discussed below, the breadth of the statute ensures that

15  enforcement cannot be arbitrary or discriminatory as the statute delegates almost no discretion to

16  enforcement officers.

17          Given the lack of demonstrated confusion and the lack of evidence of arbitrary or

18  discriminatory enforcement, the Court holds that the ordinance is not unconstitutionally vague.

19      **3.  Tumwater's Ordinance is not Overly Broad**

20          Mr. McClanahan relies on the overbreadth doctrine for standing on behalf of others to

21  assert that this statute violates their rights by chilling their constitutionally protected expressive

22  conduct.  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  The Supreme Court has carefully

23  circumscribed this doctrine to prevent courts from prohibiting states from enforcing a challenged

24  law in situations where it is valid.  *Id.* at 615.  To limit this doctrine, the Court requires

ORDER- 9

1   "particularly where conduct and not merely speech is involved…that the overbreadth of a statute

2   must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate

3   sweep." *Vincent*, 466 U.S. at 799 (quoting *Broadrick*, 413 U.S. at 615).

4        Requiring "substantial overbreadth," the Court has stated that "[t]he bare possibility of

5   unconstitutional application is not enough." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217

6   (1975).  The statute must "significantly compromise recognized First Amendment protections of

7   parties not before the court for it to be facially challenged on overbreadth grounds." *Vincent*,

8   466 U.S. at 801.

9        Mr. McClanahan bears the burden of proving that this statute is overly broad and has

10   failed to do so.  *Hill*, 530 U.S. at 732 (petitioners failed to establish that the challenged statute

11   was overbroad).  Mr. McClanahan has not shown that application of this statute would be

12   unconstitutional as applied to any third party not before the Court.  This is critical because as

13   applied to Mr. McClanahan, the application of the ordinance was constitutional.

14        Even if he had standing, Mr. McClanahan has failed to show that the statute is

15   substantially overbroad and would significantly compromise First Amendment protections in an

16   impermissible manner.

17      **4.  Tumwater's Ordinance Does Not Constitute a Prior Restraint**

18        Mr. McClanahan argues that giving public officials "the power to deny use of a forum in

19   advance of actual expression" constitutes a prior restraint.  Dkt. 10 at 13 (relying on *Ward*, 491

20   U.S. 795 fn. 5).

21        *World Wide Rush* clarifies that legislative discretion to restrict speech is not the primary

22   concern under the prior restraint doctrine.  *World Wide Rush, LLC v. City of Los Angeles*, 606

23   F.3d 676, 687 (9th Cir. 2010).  Rather, the concern typically arises when "discretion is delegated

24   to an administrator, police officer, or other executive official, as opposed to a legislative body."

*Id.* at 688 (internal quotations omitted) (relying on *Long Beach Area Peace Network*, 574 F.3d 1011, 1042 (9th Cir. 2008)). To correct or curtail the potential for this abuse, "[r]egulations must contain narrow, objective, and definite standards to guide the licensing authority and must require officials to provide an explanation for his decision." *World Wide Rush*, 606 F.3d at 687 (internal quotations omitted).  Alternatively, the regulation may not ban expression but regulate it as to time, manner, and place. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 126 (1997).

Here, little opportunity for abuse of discretion exists because there has been no delegation of discretion.  In fact, an enforcement agent has authority to consider only whether the sign is in the right-of-way, and if so, whether it is an official sign.  By comparison, under a permitting structure, the official would have the authority to grant or deny a permit on a case-by-case basis for the speaker to exercise his or her First Amendment rights in the forum.  *See e.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992) The breadth of Tumwater's restriction leaves almost no discretion in the hands of the officer and therefore does not constitute an unlawful prior restraint.  Furthermore, as discussed above, Tumwater's ordinance is a valid time, manner, and place restriction.

### 5.  Plaintiff Has Not Properly Asserted Claims Under the Washington State Constitution.

Mr. McClanahan cursorily alleges a claim under the Washington State Constitution. Article 1 § 5 of the Washington Constitution provides, "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."  Washington State courts have determined that strict scrutiny applies to all time, manner and place restrictions on speech under the Washington Constitution.  *Collier*, 121 Wn.2d at 747.  Rather than showing that a restriction advanced a *significant* government interest as under the federal constitution, Washington courts have required that the restriction advance a *compelling* government interest.

1   *Id.*  Further, in at least one similar situation, the government interest in aesthetics and safety did

2   not rise to a compelling state interest.  *Id.* at 754-56.

3          However, in order to demonstrate that the state constitution rather than the federal

4   constitution applies, the plaintiff must allege six factors laid out in *State v. Gunwall*, 106 Wn.2d

5   54, 58 (1986).  *Collier*, 121 Wn. 2d at 748 fn. 5.  As these factors were not set forth in this case,

6   the issue is not properly before this Court.  It would be inappropriate to hear this state claim in

7   the absence of requisite analysis and therefore the Court declines to do so.

8          **B.      Plaintiff Has Not Established a Likelihood of Irreparable Harm, an**
            **Equitable Entitlement, or that an Injunction Is in the Public Interest.**

9          Though failure to show the likelihood of success on his constitutional claim is fatal to his

10  motion, Mr. McClanahan's request for an injunction also fails the remaining *Winter* elements.

11  555 U.S. at 20.

12         The City's ordinance did not impermissibly restrict Mr. McClanahan's First Amendment

13  rights.  As a result, he did not suffer any constitutionally recognized harm when the City

14  enforced the ordinance.  He, therefore, did not suffer irreparable harm as the second *Winter*

15  prong requires.   *Winter*, 555 U.S. at 20.  There is no balance of equities that tips in Mr.

16  McClanahan's favor.  He is still free to display any sign he would like outside of the right-of-

17  way.

18  \*\*\*

19  \*\*\*

20  \*\*\*

21  \*\*\*

22  \*\*\*

23  \*\*\*

24

ORDER- 12

1   The public interest in right-of-way safety and accessibility render Mr. McClanahan's request

2   impracticable.  The Supreme Court and Ninth Circuit have recognized the significant

3   governmental interest in traffic safety.  That interest is the public interest and trumps Mr.

4   McClanahan's private interest in displaying his signs in the public rights-of-way.

5

6        It is so **ORDERED** that Plaintiff McClanahan's motion for a preliminary injunction is
    therefore **DENIED**.

7

    DATED this 6th day of March, 2012

8

9                              Ronald B. Leighton
                               United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24