HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BARNEY MCCLANAHAN, | CASE NO. 11-cv-5623-RBL |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT MOTION IN PART |
| v. | |
| CITY OF TUMWATER, | [DKT. #31] |
| Defendant. | |

9

10

11

12

13

14       THIS MATTER is before the Court on Defendant City of Tumwater's Motion for

15   Summary Judgment [Dkt. #31].  Pursuant to city ordinance, Defendant City of Tumwater

16   removed a yard sign from Plaintiff Barney McClanahan's property because the sign allegedly

17   was in the right-of-way.  McClanahan claims that removal of his sign is an infringement of his

18   First Amendment rights.   McClanahan sued, asserting four claims: (1) the ordinance that

19   allowed for the taking of his sign is unconstitutional; (2) the ordinance is unconstitutional as-

20   applied to him; (3) a *Monell* claim alleging the taking of his sign is unconstitutional because the

21   sign was not in the right-of-way; and (4) a claim under the Washington State Constitution.  The

22   City seeks Summary Judgment, arguing that the ordinance is a reasonable, content-neutral

23   regulation.  For the reasons below, the City's motion is GRANTED.

24

# I.   FACTUAL BACKGROUND

Tumwater Municipal Code § 18.44.080(I) prohibits signs "located upon or projecting over public streets, sidewalks or rights-of-way, except those of an official nature."  Signs of an "official nature" are "any sign posted by a local government agency that is necessary to protect and regulate the public health safety and welfare."  TMC § 18.44.015(EE).  According to the Code, "it is the intent of these regulations to protect public safety."  TMC § 18.44.010(B).

Sometime prior to June 11, 2011, Plaintiff McClanahan erected a number of yard signs in front of his business, Tumwater Pawn Brokers.  (Compl. at 2.)  The sign at issue in this case read "Stop Taking Our Property" and directed readers to a web address: www.STOPThurstonCounty.com.  The sign was about eighteen inches by twenty-four inches in size and stood approximately three feet tall. (Compl. at 2; Def.'s Mot. for Summ. J. at 4.)  It supported the "STOP Thurston County" project, which opposes Thurston County's  critical areas regulations.  (Compl. at 2; Decl. of Michael Matlock at 2.)

On June 11, 2011, City of Tumwater employees conducted a sign enforcement sweep based on complaints of signs throughout the City.  (Def.'s Mot. for Summ. J. at 4.)  During the sweep, city employees removed McClanahan's "Stop Taking Our Property" sign.  According to the City, most of the sign protruded over the sidewalk and into the right-of-way in violation of the Sign Code.  (Decl. of Michael Matlock at 2.)  But McClanahan maintains that the sign was eight feet from the sidewalk and out of the right of way. (Pl.'s Opp'n at 5.)  McClanahan claims that the "unilateral taking of [his] sign was based on the pretext that it was in the public rights-of-way."  (Pl.'s Opp'n at 4.)  Additionally, he alleges that the "same pretext is used by the City to remove political signs." (*Id*.)

After the City employees removed the sign, McClanahan came outside of the building and confronted them.  (Def.'s Mot. for Summ. J. at 5.)  He demanded the return of his sign and

1    asked for the identity of the City employees.  In response, the employees provided McClanahan

2    with a form letter stating that his signs were in the right-of-way and detailing the City ordinance.

3    McClanahan's sign was returned, and he placed it behind his shop.

4         McClanahan currently has other signs located on his property.  He has even erected a

5    substantially larger sign containing the same "Stop Thurston County" message conveyed by the

6    sign the City employees removed.  McClanahan admits he has other political signs located on his

7    property.

8         McClanahan asserts that the ordinance (1) violated his right to free speech, (2) is

9    unconstitutionally vague, (3) is unconstitutionally overbroad, and (4) is unconstitutional as-

10   applied to him.  (Compl. at 6.)  He also argues in the alternative that the City violated his First

11   Amendment rights because the sign was not in the right-of-way, which the Court interprets as a

12   *Monell* claim.  (Compl. at 5.)

13        The City moves for Summary Judgment on all claims, arguing that the ordinance is a

14   constitutionally valid, content-neutral, time, place, and manner regulation.  In response,

15   McClanahan offers over twenty declarations in an attempt to establish a genuine issue of material

16   fact.  The City moves to strike most of the declarations because (1) some came from undisclosed

17   witnesses and exhibits, (2) some are hearsay, and (3) some have an inadequate foundation or are

18   irrelevant. McClanahan did not respond to the Motion to strike.

19                                    **II.   ANALYSIS**

20   **A.  Motion to Strike**

21        McClanahan's response to the City's Summary Judgment Motion includes twenty-one

22   declarations discussing the location of McClanahan's sign, the removal of other signs, and the

23   City's response to the sign removal.  (Pl.'s Opp. at 2–3.)  The City moves to strike over half of

24

1    the declarations.  However, the evidence presented in the declarations is not relevant to the

2    constitutionality of the ordinance.  At most, the evidence is relevant to Plaintiff's alternate claim

3    that the sign was not in fact in the right of way.  However, as discussed below, even if

4    declarations are considered, the Plaintiff's fact-based *Monell* claim fails as a matter of law.[1]  As

5    the declarations do not affect the ultimate disposition of this case, the City's Motion to Strike

6    [Dkt. #36] is DENIED.

7         **B.  Summary Judgment Standard**

8              Summary judgment is appropriate when, viewing the facts in the light most favorable to

9    the nonmoving party, there is no genuine issue of material fact which would preclude summary

10   judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

11   summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

12   interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

13   trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

14   evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

15   *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

16   affect the outcome of the suit are irrelevant to the consideration of a motion for summary

17   judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

18   "summary judgment should be granted where the nonmoving party fails to offer evidence from

19   which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

20   1220.

21

22   _____

23   [1] McClanahan's declarations do not create a genuine issue of material fact for the *Monell* claim.  Even viewed in the light most favorable to McClanahan, the evidence does not create a genuine issue of material fact as to whether the City had a policy of removing certain types of

24   signs from the right-of-way.

The City seeks summary judgment on all four of McClanahan's claims: (1) the facial challenge to the ordinance; (2) the as-applied challenge to the ordinance; (3) the *Monell* claim; and (4) the Washington State Constitution claim. McClanahan argues that Summary Judgment should be denied because there are genuine issues of material fact as to the location of the sign, the location of the right-of-way, and other facts surrounding the removal of the sign. But those factual disputes are only applicable to McClanahan's *Monell* claim. Both parties agree that the City has a policy of removing signs that the City believes violate the Sign Ordinance. Thus, there are no genuine issues of material fact as to the constitutionality of the ordinance.

### C. The City Ordinance Survives All Facial Challenges.

McClanahan makes four facial challenges to the city ordinance: (1) it violates his free speech rights, (2) it is unconstitutionally vague, (3) it is unconstitutionally overbroad, and (4) it is an unconstitutional prior-restraint. For the reasons stated below, all of the claims fail as a matter of law and the City's Motion for Summary Judgment on this claim is granted.

1. <u>The Ordinance is a valid time, space, and manner regulation.</u>

McClanahan argues that the City's ordinance impermissibly restricts his right to free speech in a traditional public forum. The City argues that the ordinance is a constitutionally valid, content-neutral, time, space, and manner regulation. Because the ordinance curtails free speech, "the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000).

An ordinance is a reasonable time, place, and manner regulation "[1] so long as the restrictions are content-neutral, [2] are narrowly tailor to serve a significant government interest, and [3] leave open ample alternatives channels of communication." *United States v. Grace*, 461 U.S. 171, 177 (1983) (internal quotations omitted) (citing *Perry Educ. Assn. v. Perry Local Educator's Assn.*, 460 U.S. 37, 45 (1983)).

1    First, in order to be constitutional, the code must be content-neutral.  The primary

2 consideration to determine content neutrality is "whether the government has adopted a

3 regulation of speech because of disagreement with the message it conveys."  *Ward v. Rock*

4 *Against Racism*, 491 U.S. 781, 791 (1989); *Menotti v. City of Seattle*, 409 F. 3rd 1113, 1128 (9th

5 Cir. 2005).  Generally, "whether a statute is content neutral or content based is something that

6 can be determined on the face of it; if the statute describes speech by content then it is content

7 based." *Menotti*, 409 F.3d at 1129 (9th Cir. 2005)(quoting *City of los Angeles v. Alameda Books,*

8 *Inc.*, 535 U.S. 425, 448 (2002) (Kennedy, J., concurring)) (internal quotations omitted).  But if an

9 ordinance is based on the identification or a speaker or event, as opposed to distinguishing

10 content, the ordinance is content-neutral.  *Reed v. Town of Gilbert*, 587 F.3d 966, 976 (2009); *see*

11 *also G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1077 (9th Cir. 2006) ("The

12 exemptions are purely speaker based according to the City's reasonable construction of the

13 provision and say nothing of the City's preference for the content of these speaker's messages,

14 nor do they allowed the City to discriminate against disfavored speech.").

15    The code at issue here allows for the removal of *all* signs placed in the right of way if a

16 local government agency did not post them.  The code allows removal of McClanahan's sign if it

17 was posted by a non-government entity in the right of way, not if employees disagree with

18 content.  *See G.K. Ltd.*, 436 F.3d at 1076.  Nothing in the code requires city employees to read

19 through the sign in order to discover the underlying message before removal.  An enforcement

20 officer only needs to determine whether a local government agency placed the sign in the right of

21 way.  McClanahan has failed to met his burden of establishing that the ordinance is not content-

22 neutral as a matter of law.

23

24

1    Second, the content-neutral ordinance must be narrowly tailored to advance a significant

2    government interest.  "[T]he requirement of narrow tailoring is satisfied so long as the . . .

3    regulation promotes a substantial government interest that would be achieved less effectively

4    absent the regulation."  *Ward*, 491 U.S. at 799 (internal quotations omitted).  The government

5    need not choose the least restrictive or intrusive way, but the means may not be "substantially

6    broader than necessary."  *Id*.

7         The challenged code specifically recites that it advances public safety.  *See* TMC

8    18.44.010(B) ("[I]t is the intent of these regulations to protect public safety.").  The City's

9    interest in public safety satisfies the requirement of a significant interest.  *See Metromedia v. City*

10   *of San Diego*, 453 U.S. 490, 507–508 (1981) ("Nor can there be substantial doubt that the twin

11   goals that the ordinance seeks to further—traffic safety and the appearance of the city—are

12   substantial governmental goals."); *Reed*, 587 F.3d at 980 ("[I]dentification of the recognized

13   interest in safety and aesthetics 'is all our review requires to prove a significant interest.'")

14   (quoting *Get Outdoors II v. City of San Diego*, 506 F.3d 886, 893–94 (9th Cir. 2007)).

15        Time and place limitations on signs can advance the government's interest in public

16   safety.  *See Reed*, 587 F.3d at 980.  In *Reed*, the court found that the time and place restrictions

17   on signs were not "substantially broader measures than required to make sure the rights-of-way

18   are not so thicketed with signs as to pose a safety hazard or create an aesthetic blight."  *Id*.  The

19   court acknowledged that the limitations did not allow for optimum exposure, but stated that "the

20   test is not convenience or optimal display."  *Id*.

21        Here, the City's sign code restricts the location of signs, but otherwise allows any

22   temporary sign to be displayed.  If a sign is found to be in the right-of-way, city employees can

23   remove the sign and give it back to the sign owner.  The City employees in this case immediately

24

1    gave McClanahan his sign back, and he was allowed to display it outside of the right-of-way.

2    The City also left a similar, much larger sign untouched because it was outside of the right-of-

3    way.  Although the City's limitation may not have allowed McClanahan "optimum exposure,"

4    the limitation is not substantially broader than necessary to reduce the safety hazard that signs in

5    the right-of-way pose.  The City has met its burden of establishing that the code is narrowly

6    tailored to advance a significant government interest, and McClanahan has failed to undermine

7    that conclusion.

8           Finally, the ordinance must leave open ample alternative methods of communication.

9    The test for ample alternatives is not whether the optimal option is available; it is whether the

10   ordinance "foreclose[s] an entire medium of public expression across the landscape of a

11   particular community or setting." *Reed*, 587F.3d at 980 (internal quotations omitted) (quoting

12   G.K. Ltd., 436 F.3d at 1074).  In *Reed*, the court affirmed the proposed alternatives to a sign

13   permit requirement that included, "distributing leaflets, sending email messages or mail

14   advertisements, walking the sidewalks with signs advertising the church services, posting signs

15   carrying religious messages on their own property, and advertising in the newspaper, phonebook,

16   or other print media." *Id*. at 980–981.  McClanahan not only has similar alternatives to

17   expression, he also has the option of posting the same sign on his property if it is out of the right-

18   of-way—which McClanahan has already done.  McClanahan does not dispute that he currently

19   has two political signs and a larger version of the same "STOP Thurston County" sign in his yard

20   outside of the right-of-way.

21          Because the ordinance is content-neutral, narrowly tailored to achieve a significant

22   government interest, and provides ample alternative methods of communication, the ordinance is

23

24

1  a constitutional time, place, and manner regulation.  The City has met its burden of establishing

2  that, as a matter of law, the code is constitutional.

3                 2.   <u>The City Ordinance is Not Unconstitutionally Vague.</u>

4        McClanahan claims that the ordinance is unconstitutionally vague because the

5  ordinance's failure to define "right-of-way" encourages arbitrary enforcement.  The City

6  responds that the term "right-of-way" has a generally accepted meaning.  McClanahan bears the

7  burden of proving this claim.  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  When the ordinance

8  is facially attacked, as it is here, it is not enough to show that the ordinance may be vague in

9  certain situations not before the Court.  *Id*. at 733.

10        An ordinance can be impermissibly vague for two reasons: (1) it fails to provide people

11  of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) it

12  authorizes or encourages arbitrary and discriminatory enforcement.  *Chicago v. Morales*, 527

13  U.S. 41, 56–57 (1999).  The determination of vagueness follows common sense; it is not

14  necessary to employ a technical legal analysis.  *Hill*, 530 U.S. at 732 ("The likelihood that

15  anyone would not understand any of those common words seems quite remote.").

16        First, the ordinary meaning of right-of-way is sufficiently clear.  Although the term right-

17  of-way is not defined in the statute, the City correctly notes that "right-of-way" has a generally

18  accepted meaning.  Based on the overall language of the ordinance—forbidding non-public signs

19  in streets, sidewalks, and rights of way—the ordinance is hardly a trap for the unwary.  A person

20  of ordinary intelligence should understand the term to mean the strip of land owned by the public

21  in which the street and appurtenant facilities will be constructed.

22        Similarly, the Ninth Circuit and Washington have not found other ordinances using the

23  term "right-of-way" unconstitutionally vague.  *See G.K. Ltd.*, 436 F.3d at 1076; *Collier v. City of*

24  *Tacoma*, 121 Wn.2d 737, 744 (1993).  The Washington Supreme Court even relied on testimony

1  from a Tacoma Public Works Department employee to understand where the city prohibited

2  signs; it still did not consider the term impermissibly vague. *Collier*, 121 Wn.2s at 743–44fn.2.

3    Second, the ordinance does not encourage arbitrary enforcement. McClanahan argues

4  that the City's use of maps to determine the right-of-way in some occasions is evidence that

5  enforcement is arbitrary. However, he cites no authority that holds an ordinance is vague

6  because in specific instances a city official may have to use a map to determine its specific

7  application. "As always, enforcement requires the exercise of some degree of police judgment."

8  *Hill*, 530 U.S. at 733. In this case, the degree of judgment involved is acceptable because of the

9  bright line rule that prohibits *all* non-official signs located in the right-of-way. The ordinance

10  delegates almost no discretion to enforcement officers.

11    McClanahan has not met his burden; he has not overcome the City's evidence of a

12  generally accepted meaning of the term "right-of-way." Because the term "right-of-way" has a

13  generally accepted meaning and enforcement officers are given almost no discretion, the

14  ordinance is not impermissibly vague as a matter of law.

15       3. <u>The City Ordinance is Not Unconstitutionally Overbroad.</u>

16    McClanahan also claims that the statute is unconstitutionally overbroad. McClanahan

17  bears the burden of proving that the statute is overly broad. *Hill*, 530 U.S. at 732. "Facial

18  Overbreadth has not been invoked when a limiting construction has been or could be placed on

19  the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (2008). Because the

20  Supreme Court has carefully circumscribed this doctrine, the Court requires that "the

21  Overbreadth of a statute must not only be real, bust substantial as well, judged in relation to the

22  statute's plainly legitimate sweep." *Id*. at 615. "The bare possibility of unconstitutional

23  application is not enough." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217 (1975).

24

1   McClanahan fails to show how the ordinance is substantially overbroad as a matter of

2   law.  Further, He did not respond to the City's arguments in its Motion for Summary Judgment.

3   McClanahan has not shown that application of the ordinance would be unconstitutional as

4   applied to a third party not before the Court.

5              4.   The Ordinance Is Not a Prior Restraint.

6         McClanahan argues the ordinance is an unconstitutional prior restraint on speech.  As

7   discussed above, the ordinance is a valid time, place, and manner restriction—not a prior

8   restraint.  Generally, the concern under the prior restraint doctrine arises when "discretion is

9   delegated to an administrator, police officer, or other executive official, as opposed to a

10  legislative body."  *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 687 (9th Cir.

11  2010).

12        Under this ordinance, there is little opportunity for abuse of discretion by a city

13  employee.  An enforcement agent only has the authority to consider the speaker and the location

14  of the sign.  By comparison, under a permitting structure, the official would have the authority to

15  grant or deny a permit on a case-by-case basis.  *See e.g.*, *Forsyth County v. Nationalist

16  Movement*, 505 U.S. 123, 130–131 (1992).  The ordinance is not an unconstitutional prior

17  restraint as a matter of law.  The ordinance survives all of the facial attacks as a matter of law.

18  Thus, the City's Motion for Summary Judgment is GRANTED.

19        **D.  The Ordinance is Not Unconstitutional As-Applied.**

20        McClanahan argues generally that the Tumwater Sign Code was unconstitutional as

21  applied to him.  "An as-applied First Amendment challenge contends that a given statute or

22  regulation is unconstitutional as it has been applied to a litigant's particular speech activity."

23  *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1098 (2010).  McClanahan has

24  not offered any reason why the prohibition of signs in the right-of-way is unconstitutional as

1    applied to him.  McClanahan has failed to produce evidence showing that he had no other

2    opportunities to express his view point; in fact, all parties agree that McClanahan was able to put

3    the same sign back up in his yard outside of the right-of-way.

4           McClanahan has failed to meet his burden of producing evidence that the ordinance was

5    unconstitutionally applied to him, and his as applied claim fails as a matter of law.  The City's

6    Motion for Summary Judgment on the as applied claim is GRANTED.

7           **E.  McClanahan Has Not Established His Alternative Argument under *Monell*.**

8           McClanahan argues generally that the City violated his First Amendment rights.

9    McClanahan alleges that his sign was not in the right of way; other people's political signs are

10   frequently taken down; commercial signs are not removed; and the city attempted to cover-up

11   that the sign was not actually in the right of way when it was taken.  (Pl.'s Opp. to Summ. J. at

12   8–17.)  However, these facts do not establish a challenge to the ordinance.  McClanahan has

13   framed an argument that the City has an unwritten policy to remove political signs using the

14   ordinance as a pretext even if the ordinance does not apply.  As the City notes in their reply, the

15   facts amount to a traditional *Monell* claim that requires McClanahan to establish an

16   unconstitutional policy.

17          A city can be sued under 42 U.S.C. § 1983 "if the constitutional violation was a product

18   of a policy, practice, or custom adopted and promulgated by the city's officials."  *Levine v. City*

19   *of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (citing *Monell v. Dept. of Social Servs.*, 436 U.S.

20   658, 690–91 (1978)).  "A municipality can be found liable under § 1983 only where the

21   municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489

22   U.S. 378, 385 (1989).  Thus, a plaintiff must show "(1) that [he] possessed a constitutional right

23   of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to

24   deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the

1   'moving force behind the constitutional violation.'"  *Van Ort v. Estate of Stanewich*, 92 F.3d

2   831, 835 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

3          To the extent that the "policy, practice, or custom" is the City's written ordinance, the

4   claim fails because (as stated above) the ordinance is valid as a matter of law.  Additionally, to

5   the extent that policy is using the written ordinance to justify removal of signs that the ordinance

6   does not cover, the claim also fails.  Even if McClanahan's sign was far away from the right-of-

7   way and the City employees used the ordinance as a pretext to remove a sign the employees

8   disagreed with, McClanahan has failed to create a genuine issue of material fact as to the City's

9   policy.  McClanahan has not—and cannot—establish that the policy is to remove all "STOP

10  Thurston County" signs because McClanahan currently has one in his yard.  Although

11  McClanahan has declarations that state other political signs have been removed, the declarations

12  do not state that the signs were located outside of the right-of-way.  (Beehler Dec. at 2.)  Even

13  assuming the facts in the light most favorable to McClanahan, there is no evidence that the City

14  has a practice of using the ordinance as a pretext to remove political signs that are located

15  *outside* of the right-of-way.

16         At most, McClanahan has made out a claim against "a couple of rogue employees."

17  (Pl.'s Opp. to Summ. J. at 7.)  The City cannot be liable for the actions of its employees unless

18  the employees acted pursuant to a "policy, practice, or custom."  As a matter of law, a "rogue

19  employee" does not give rise to a *Monell* claim.  McClanahan has failed to meet his burden to

20  show that the City has any policy that led to the constitutional violation.  Thus, the City's Motion

21  for Summary Judgment as to the *Monell* claim is GRANTED.

22         **F.  McClanahan's State Constitutional Claim is Not Properly Before Court.**

23         McClanahan makes a claim under the Washington State Constitution.  The Washington

24  Supreme Court applies the federal constitution unless the plaintiff alleges several non-exclusive

1   factors that demonstrate that "it is appropriate to resort to the Washington Constitution for a

2   separate and independent state grounds of decisions: (1) the textual language; (2) differences in

3   the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6)

4   matters of particular state or local concern." *Ino Ino, Inc. v. City of Bellevue*, 132 Wash. 2d 103,

5   114 (1997); *see also Collier*, 121 Wash. 2d at 748 fn. 5.  Although the state constitution

6   interprets free speech more broadly than the federal constitution, the factors still must be alleged

7   to show that greater protection is necessary in this particular context.  *Ino Ino*, 132 Wash. 2d at

8   115 ("Even where a state constitutional provision has been subject to independent interpretation

9   and found to be more protective in a particular context, it does not follow that greater protection

10  is provided in all contexts.").

11       The City argues that McClanahan has failed to allege the required factors, and thus, the

12  issue is not properly before the Court.  (Def.'s Mot. for Summ. J. at 15.)  McClanahan failed to

13  respond.[2]  According to Local Civ. Rule 7, "[i]f a party fails to file papers in opposition to a

14  motion, such failure may be considered by the court as an admission that the motion has merit."

15  McClanahan has not stated any opposition to Summary Judgment on the state law claim and has

16  not met his burden.  Summary Judgment on the Washington State Constitutional claim is

17  GRANTED.

18  //
    //
19  //
    //
20  //
    //
21
                                                  //
22

23  ──────────────────

24       [2] The Court has also advised McClanahan that the Washington State Constitutional Claim
    is not properly before the Court.  (Dkt. #29, Order Denying Mot. for Temp. Inj. at 12.)

1

CONCLUSION

2      The City's Motion to Strike [Dkt. #36] is DENIED.

3      The City's Motion for Summary Judgment [Dkt. #31] is GRANTED.  All of Plaintiff's

4 claims are DISMISSED with prejudice.

5      IT IS SO ORDERED.

6      Dated this 19th day of September, 2012.

7

8                                         _____

9                                       Ronald B. Leighton
                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

[DKT. #31] - 15